MONACO, D., Associate Judge.[1]
This appeal arises from an order of taking rendered by the circuit court pursuant to chapter 74, Florida Statutes (2007), in favor of the condemning authority, Leon County, and against the landowner, Helen B. Rawls, and certain other defendants. Mrs. Rawls seeks review of the order of taking, asserting that it was entered without the County properly proving a necessity for the taking. Because there was substantial competent evidence sufficient to support the finding of necessity, we affirm.
Leon County brought an eminent domain proceeding in order to acquire a parcel of real estate of slightly less than two acres owned by Mrs. Rawls and located along Ox Bottom Road in Leon County. According to the resolution of the Board of County Commissioners of Leon County authorizing the taking, the purpose for the acquisition was to extend Kerry Forrest Parkway from its existing terminus in a subdivision that had been established as a Development of Regional Impact (“DRI”)[2] , to Ox Bottom Road; that is to say, to connect one road to another. The road is being designed and constructed pursuant to a joint project agreement between the County and the City of Tallahassee. The resolution reflected that the extension project had been identified in the long range transportation plans of the Capital Region Transportation Planning Agency, and that *546 the construction was consistent with the relevant comprehensive plan. By the resolution the Board of County Commissioners determined that the extension project was for a valid public purpose, and that the taking was “necessary for the construction and maintenance of the project.”
The County sought the immediate acquisition of the property in accordance with chapter 74, Florida Statutes. Mrs. Rawls resisted the “quick taking.” At the order of taking hearing the County introduced the authorizing resolution and called as its first witness the engineer of record and project manager. The engineer testified that the agreement associated with the DRI between the developer and the relevant governmental agencies identified the alignment to be used in connecting Kerry Forrest Parkway to Ox Bottom Road, and that he, therefore, looked at no other alignments in the design of the road. In addition, however, the engineer also confirmed that the needs of the long rangé transportation plan would be met by the proposed alignment, and that certain environmental concerns[3] would be satisfied. He likewise considered safety issues associated with the project, including a turnaround area for utility maintenance trucks, and the like. Finally, the engineer testified that he also considered cost in meeting the construction and alignment requirements. The only other witness who testified was an appraiser for the County who gave his opinion with respect to the fair market value of the land to be taken.
The matter of public purpose was essentially conceded by Mrs. Rawls at the order of taking hearing, and indeed appears also to have been conceded during the oral argument before this court. The primary issue before us, therefore, is whether the County provided sufficient evidence of “necessity” to support the taking.
Article X, section 6(a) of the Florida Constitution reads as follows:
No private property shall be taken except for a public purpose and with full compensation therefore paid to each owner or secured by deposit in the registry of the court and available to the owner.
Although the matter of necessity is not specifically mentioned in the Constitution, it has long been the law of Florida that a condemning authority must show a necessity for the taking as a condition precedent to the valid exercise of the power of eminent domain. See Canal Auth. v. Miller, 243 So.2d 131, 133 (Fla.1970).
The question, more precisely, is whether a particular parcel being sought by a condemning authority is in fact necessary for the public use or project proposed by that authority. See § 73.021(1), Fla. Stat. (2007). “Necessity,” however, in this context means a reasonable and not an absolute necessity. See Sibley v. Volusia County, 147 Fla. 256, 2 So.2d 578 (1941).
A determination concerning the necessity for the taking of property is initially a legislative function. See Jones v. City of Tallahassee, 266 So.2d 382 (Fla. 1st DCA 1972), modified, 281 So.2d 341 (Fla.1973). It is for this reason that once a reasonable necessity is demonstrated, the exercise of that discretion by the condemning authority may not be disturbed in the “absence of bad faith or gross abuse of discretion.” See Canal Auth., 243 So.2d at 134; see also Jones; Sibley; Catholic Burse Endowment Fund, Inc. v. State Rd. Dep’t, 180 So.2d 513 (Fla. 2d DCA 1965), cert. denied, 188 So.2d 814 (Fla.1966). Accordingly, once the condemning authority *547 shows a reasonable necessity for the taking, the landowner must either concede the existence of necessity, or be prepared to show bad faith, oppression or an abuse of discretion as an affirmative defense. See City of Jacksonville v. Griffin, 346 So.2d 988 (Fla.1977); Canal Auth.; Jones. When that contest is placed before the court, the issue of necessity becomes ultimately a judicial question with respect to which a landowner is entitled to be heard. See City of Lakeland v. Bunch, 293 So.2d 66, 68 (Fla.1974); State, Dep’t of Transp. v. Barbara’s Creative Jewelry, Inc., 728 So.2d 240 (Fla. 4th DCA 1998), review dismissed, 769 So.2d 1040 (Fla.2000).
There are many factors that should be considered in arriving at a determination of whether a reasonable necessity for the taking of a property exists. Among those identified by the Florida Supreme Court are cost, environmental factors, long-range area planning, safety considerations and the existence of alternative routes. See Hillsborough County v. Sapp, 280 So.2d 443, 445 (Fla.1973); see also Cordones v. Brevard County, 781 So.2d 519 (Fla. 5th DCA 2001); Florida Power Corp. v. Gulf Ridge Council, 385 So.2d 1155 (Fla. 2d DCA 1980).
In the present case, as indicated previously, the engineer for the project testified concerning each of the factors discussed in Sapp, and appears to have fully satisfied the evidentiary foundation for the taking. Mrs. Rawls, however, argues that the County failed to prove necessity, because the engineer did not consider other possible alignments for the road.
In Wilton v. St. Johns County, 98 Fla. 26, 123 So. 527 (1929), the Florida Supreme Court long ago addressed this position as follows:
[A condemning authority] is vested with a considerable discretionary power, and may determine the location of the land required to be appropriated in order to accomplish the public purpose in view; and such determination will not be interfered with by the courts if it is made in good faith and is not capricious or wantonly injurious, or in some respect beyond the privilege accorded by the statute. The landowner cannot object merely because some other location might have been made or some other property obtained which would have been suitable for the purpose.
(Emphasis added). Id. at 535. See also Sapp; Cordones. In the present case, the issue of necessity as it relates to the alignment of the road was addressed by the evidence adduced by the County. Although it is not presumed that a condemning authority abused its discretion or acted in bad faith or illegally in its determination of necessity, the condemning authority, the County in this instance, has as an eviden-tiary obligation the requirement to put on “some evidence of reasonable necessity for the taking.” See Rukab v. City of Jacksonville Beach, 811 So.2d 727 (Fla. 1st DCA 2002). It did so here with the testimony of the engineer fortified by the introduction into evidence of the resolution of the Board of County Commissioners.[4] “Once this is shown, however, the landowner must then either concede the existence of a necessity or be prepared to show bad faith or abuse of discretion as an affirmative defense.” Id.
Mrs. Rawls did not show bad faith or an abuse of discretion on the part of the County. The trial court found against her *548 in this connection and concluded in its order of taking that “the condemnation of the Subject Property is for a valid public purpose and is necessary for such purpose.” In fact, during the course of the hearing, when the court asked counsel for the landowner to suggest another available alternative alignment to connect the two roads, the suggested alternate path was characterized by the trial judge as “a completely unreasonable alternative.”
As there was substantial competent evidence to support the findings and conclusions of the trial judge, we find no error and affirm the order of taking in all respects.
AFFIRMED.
PALMER, W., and ORFINGER, R., Associate Judges, concur.

. The panel of associate judges are sitting by designation of the Chief Justice of the Florida Supreme Court.

. A DRI is “primarily a comprehensive land use review technique for large scale development involving two groups-developers ... and ... governmental planners and permitting authorities." See Caloosa Prop. Owners Ass'n, Inc. v. Palm Beach County Bd. of County Comm'rs, 429 So.2d 1260, 1264 (Fla. 1st DCA), review denied, 438 So.2d 831 (Fla.1983); see also Grand Dunes, Ltd. v. Walton County, 714 So.2d 473, 475 (Fla. 1st DCA), review denied, 728 So.2d 201 (Fla.1998).

. The most obvious of these concerns related to a “52 inch specimen oak tree” that was designed around, as well as certain drainage issues.

. Had the County introduced only the resolution, the evidence would have been insufficient to demonstrate necessity. See Canal Auth.; Katz v. Dade County, 367 So.2d 277 (Fla. 3d DCA 1979).