BOYER, Acting Chief Judge.
By petition for writ of certiorari, petitioners (defendants in the trial court) seek to have reviewed an order of the trial court upholding the necessity for the taking of petitioners’ property by respondent under its power of eminent domain.
Proceedings were commenced by respondent filing a complaint in eminent domain together with a declaration of taking. The trial court entered an order of taking without first taking testimony or receiving any other evidence as to necessity. This Court granted certiorari and reversed and remanded for the purpose of taking such testimony.[1]
After remand a hearing was held at which it was established that respondent has adopted a Neighborhood Development Plan (NDP) pursuant to the Community Redevelopment Act of 1969.[2] The NDP assigned petitioners’ land to a designation of C-2 with a number one priority for rehabilitation, clearance and redevelopment as a residential area. Other than the resolution for authorizing the the taking of the land for use in its NDP, respondent has taken no official action toward development of the property, how the land will be used, what the zoning should be or which streets should be located. For the last several years respondent has been acquiring some of the lands in the C-2 area, but not all of such lands. It has demolished the buildings and leveled the land, nothing more. It has adopted no plan of redevelopment, has not specified petitioners’ land for any particular use, has not rezoned industrial property taken for redevelopment as residential areas, has not revised the layout of streets, has not decided whether the redevelopment shall be by the city itself or by private enterprise, nor has it taken any other official action other than the demolition of the buildings and the leveling of the land, as aforesaid. Although the Community Redevelopment Act of 1969 does indeed authorize the adoption of a Community Redevelopment Plan[3] its responsibilities do not end there. Numerous other guides and requirements are set forth in the act.[4] Conspicuous by their absence are answers to the proverbial questions: How? and when? Next year? Twenty years into the future ? These questions, we are taught by Ball v. City of Tallahassee,[5] are important. As stated in that case:
“Moreover, the evidence which was offered purportedly involved the necessity for the entire project; it did not deal *607 sufficiently with regard to the particular parcel of land involved here, * * * to show the required reasonable necessity. The city must present evidence pinpointing the need for the particular property, * * * sought to be condemned. No such evidence being submitted by the city, its petition for eminent domain, * * * cannot be approved even though petitioner did not offer any evidence to refute the condemnation proposal.” (281 So.2d 337)
Respondent complains that application of the requirements mandated by Ball v. City of Tallahassee may well render it impossible for it to ever demonstrate necessity or need. That will, of course, depend upon respondent’s progress of compliance with the provisions of the act under which it has elected to proceed.[6] The evidence reveals that large tracts of land have already been acquired by respondent based only upon its plan with no further steps toward implementation. In the absence of some specific plan for development of the property in the reasonably foreseeable future, including plans for financing such a vast undertaking, no need is demonstrated for the displacement of residents from their homes and business from their locations.
Petitioners are conducting an industrial fence manufacturing business on their land which joins a railroad track and other property owned by the railroad. Respondent has indicated that it has no present plan to acquire the railroad right-of-way nor the adjoining property, notwithstanding that it is part of the C-2 area of the NDP. Under such circumstances, depending upon the exact relative locations of the properties, it would appear to be relevant to inquire as to the necessity of acquiring petitioners’ property while permitting the adjoining property owned by the railroad (exclusive of the railroad right-of-way) [7] to remain unmolested.
We again reverse and remand for further proceedings consistent herewith.
It is so ordered.
MILLS, J., concurs.
McCORD, J., concurs specially.

. Griffin v. City of Jacksonville, Fla.App. 1st 1974, 299 So.2d 90.

. Chapter 163 Florida Statutes, Part III.

. F.S. § 163.360.

 et seq. sq oo fia °0 CO * CO O ri XO CO eoo s . ■h m ooo ^ CQ g 10 tH §. h zq C09 QQ jg fe CO CO O CO

. Sup.Ct.Fla.1973, 281 So.2d 333.

. See Community Redevelopment Act of 1969, Chapter 163, Florida Statutes, Part III, supra.

. Please see City of Miami v. Florida East Coast Railway Co., Fla.App. 3rd 1973, 286 So.2d 247.